UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**Clerk of Court**
United States District Court
Room 362 – Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, WI 53202

U.S. District Court
Wisconsin Eastern

MAR 1 7 2026

FILED
Clerk of Court

Amira Rajput
Plaintiff,

**2 6 -C- 4 3 0 _**

v.  Amazon.com Services LLC,
Defendant.

COMPLAINT

Plaintiff, proceeding pro se, brings this action against Defendant Amazon.com Services LLC and alleges as follows:

PARTIES

1.  Plaintiff is an individual residing in Waukesha County, Wisconsin.
2.  Defendant Amazon.com Services LLC is an employer engaged in business in the United States and employs more than fifteen employees.
3.  At all relevant times, Defendant was Plaintiff's employer.

JURISDICTION AND VENUE

4.  This action arises under the Americans with Disabilities Act of 1990.
5.  This Court has jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under federal law.
6.  Venue is proper in this District because Plaintiff performed work in this District and the unlawful employment practices described herein affected Plaintiff in this District.

STATEMENT OF FACTS

Plaintiff brings this action against Defendant alleging unlawful discrimination based on disability and religion. Plaintiff asserts that Defendant engaged in discriminatory and retaliatory conduct related to Plaintiff's documented disability and the use of approved workplace accommodations, as well as unequal disciplinary action connected to Plaintiff's religious expression. Plaintiff files this action pursuant to the Americans with Disabilities Act and Title VII

of the Civil Rights Act of 1964 after exhausting administrative remedies through the Equal Employment Opportunity Commission and receiving a Notice of Right to Sue.

7. Plaintiff is currently employed by Defendant, Amazon, and was working in a position for which Plaintiff was qualified.
8. Plaintiff performed the essential duties of the position and met the employer's expectations prior to the events described below.
9. During Plaintiff's employment, Plaintiff developed a serious medical condition that qualifies as a disability under the Americans with Disabilities Act.
10. Plaintiff informed Defendant of the medical condition and the need for medical treatment and workplace accommodations.
11. In or around October 2025, Plaintiff requested reasonable accommodations related to Plaintiff's disability.
12. Defendant approved certain disability accommodations for Plaintiff at that time.
13. However, Plaintiff was informed that utilizing the approved accommodations would result in a reduction of Plaintiff's salary of approximately $15,000 per year.
14. As a result of this threat of a substantial salary reduction, Plaintiff was placed in the position of either foregoing necessary disability accommodations or accepting a significant financial penalty.
15. This condition effectively discouraged Plaintiff from utilizing approved disability accommodations.
16. Plaintiff attempted to work with Defendant regarding accommodations and the ability to continue performing the essential functions of the job without being financially penalized.
17. Defendant failed to engage in a meaningful interactive process with Plaintiff to identify reasonable accommodations that would allow Plaintiff to continue working without such penalty.
18. As Plaintiff's condition worsened, Plaintiff required medical leave and ongoing treatment from multiple medical providers and specialists.
19. Plaintiff is currently on medical and disability leave and continues to receive treatment and evaluation.
20. Defendant's actions and failure to properly accommodate Plaintiff's disability caused significant hardship to Plaintiff, including loss of income, financial stress, and uncertainty regarding Plaintiff's employment.
21. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.
22. The Equal Employment Opportunity Commission issued a Notice of Right to Sue dated February 19, 2026.
23. Plaintiff brings this action within ninety days of receiving the Notice of Right to Sue.
24. Plaintiff also experienced a separate reduction in compensation of approximately $8,000 after relocating for work. Plaintiff provided Defendant's human resources department approximately four months' advance notice of the relocation. Plaintiff was not informed prior to relocating that the move would result in a reduction in salary, and Plaintiff did not locate any policy in Defendant's employee handbook indicating that

such a pay reduction would occur. This unexpected reduction further contributed to Plaintiff's financial hardship during the events described above.

25. Plaintiff had a preexisting medical condition recognized by the Social Security Administration since 2000, that qualified as a disability. During Plaintiff's employment, the condition worsened significantly following workplace actions taken by Defendant. After Plaintiff requested and received approval for reasonable workplace accommodations, Defendant threatened to reduce Plaintiff's salary by approximately $15,000 if Plaintiff utilized those approved accommodations. These threats created significant stress and financial pressure, which contributed to the worsening of Plaintiff's medical condition causing an immediate filing for short-term disability leave March 4, 2026.

Defendant justified the threatened salary reduction by claiming that Plaintiff's approved disability accommodations would result in a reduced workload. However, this characterization was inaccurate. Plaintiff's accommodations did not reduce the number of hours worked or the essential duties performed. Rather, the accommodations simply allowed Plaintiff additional time to complete certain tasks due to Plaintiff's medical condition. Plaintiff continued to perform the essential duties and responsibilities of the position and did not request a reduction in workload. The justification provided did not accurately reflect Plaintiff's work responsibilities or the nature of the approved accommodations.

26. The salary reduction threat was communicated to Plaintiff by a human resources representative who was not an ADA accommodation specialist; it is this same HR employee who reduced the Plaintiff's salary one month after relocating in August 2025 without advance notice thereby showing a pattern of hostility and legal violations.

27. Plaintiff attempted to resolve these issues prior to filing this lawsuit. Plaintiff sent Defendant written correspondence for support and assistance numerous times since October 28, 2025, when the accommodations where approved and wrote a demand letter providing seven days to address the ongoing issues related to Plaintiff's approved disability accommodations and compensation concerns. Defendant did not respond to the demand letter and has failed to communicate with Plaintiff regarding these matters for approximately five months, effectively ignoring Plaintiff's attempts to resolve the situation.

28. As a result of Defendant's actions, Plaintiff has suffered significant financial and medical harm. The threatened and actual reductions in compensation created financial hardship and uncertainty regarding Plaintiff's ability to maintain stable income and employment. The stress and pressure resulting from these actions, including threats tied to the use of approved disability accommodations and disciplinary measures related to religious expression, contributed to a worsening of Plaintiff's existing medical condition. Plaintiff has experienced emotional distress, increased health challenges, and financial strain as a direct result of Defendant's conduct.

PATTERN OF DISCRIMINATORY AND RETALIATORY CONDUCT

29. During a therapy session, Plaintiff used the word "faith" in the context of addressing a client's treatment goals, which included religious or faith-related objectives. The reference was made in a professional and clinically appropriate manner consistent with the client's stated goals.

30. Plaintiff did not include the term "faith" in a professional biography or public profile. However, Plaintiff was nonetheless disciplined for the use of the term during the session. At the same time, other therapists employed by Defendant were permitted to reference spirituality or similar concepts in their professional biographies without disciplinary action. The Director of the program also wrote a group Slack message encouraging the behavioral health team to enroll in an educational CEU training that taught therapists how to incorporate spirituality into the therapeutic space. Plaintiff has documented evidence of this upon request from the court.

31. Plaintiff alleges that this disciplinary action was inconsistent with Defendant's treatment of other similarly situated employees and constituted discrimination based on religion.

32. Plaintiff also requested that Defendant conduct an internal investigation into allegations made against Plaintiff around May 2025 and submitted approximately twenty-seven pages of documentation responding to the claims. Plaintiff contends that these allegations were inaccurate and that Plaintiff should not have been placed in the position of having to respond to extensive unsupported accusations. The investigation was handled by the same human resources representative who had previously reduced Plaintiff's salary by $8,000 in September 2025 for relocating and communicated the additional threatened salary reductions [another $15,000] to Plaintiff. Plaintiff was informed that the investigation concluded in favor of the therapists who had raised the allegations against Plaintiff. Plaintiff alleges that the process and outcome contributed to a hostile work environment and caused significant stress, which worsened Plaintiff's medical condition. As a result of the ongoing stress and workplace circumstances, Plaintiff ultimately took a leave of absence in or around October 2025.

CLAIM FOR RELIEF
Violation of the Americans with Disabilities Act – Failure to Accommodate

33. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint.

34. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

35. Defendant was aware of Plaintiff's disability and Plaintiff's need for reasonable workplace accommodations.

36. Plaintiff requested reasonable accommodations that would allow Plaintiff to continue performing the essential functions of the job.

37. Defendant approved accommodations but conditioned their use on a reduction of Plaintiff's salary of approximately $15,000 per year.

38. Conditioning the use of disability accommodations on a substantial reduction in compensation penalizes Plaintiff for exercising rights protected by the Americans with Disabilities Act.

39. Defendant failed to provide reasonable accommodations without imposing an unlawful financial penalty and failed to engage in the required interactive process.
40. Defendant's actions constitute discrimination on the basis of disability and failure to provide reasonable accommodation.

CLAIM FOR RELIEF
Violation of the Americans with Disabilities Act – Retaliation / Interference

41. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint.
42. Plaintiff engaged in protected activity by requesting disability accommodations.
43. Defendant threatened a substantial salary reduction if Plaintiff utilized the approved accommodations.
44. Such conduct interferes with and retaliates against Plaintiff's exercise of rights protected under the Americans with Disabilities Act.
45. Defendant's conduct would discourage a reasonable employee from requesting or utilizing disability accommodations.
46. As a result, Plaintiff suffered harm including financial hardship, emotional distress, and interference with protected rights.

PRO SE PLEADING STANDARD

47. Plaintiff is proceeding in this matter without the assistance of counsel for no legal counsel has been able to assist and respectfully requests that this Complaint be construed liberally and held to a less stringent standard than pleadings drafted by attorneys.

Practical Barriers to Alternative Employment

Plaintiff's profession requires completion of specific licensure requirements, including supervised clinical experience and professional hours necessary to maintain licensure as a therapist. In order to do so, it requires the Plaintiff complete graduate school training for a second time, which is not financially possible. Plaintiff's position with Defendant does not require licensure but all other companies require licensure for the same role.

Plaintiff has attempted to seek alternative employment over the past year but has been unable to secure another position. As a result, Plaintiff faced significant practical barriers to obtaining comparable employment elsewhere while the events described in this Complaint were occurring. These circumstances contributed to the financial and professional harm experienced by Plaintiff.

RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. Back pay and compensation for lost wages resulting from Defendant's unlawful conduct;

B. Compensation for emotional distress, financial hardship, and other damages caused by Defendant's actions;

C. Compensation for the threatened and actual salary reductions connected to Plaintiff's use of disability accommodations;

D. Any additional compensatory and punitive damages allowed by law;

E. An order requiring Defendant to cease discriminatory and retaliatory practices;

F. Any other relief the Court deems just and proper.

Respectfully submitted,

Amira M. Rajput
1576 Valley Rd. #106
Oconomowoc, WI 53066
Amiracle.rajput7777@gmail.com
424.425.5309


Plaintiff, Pro Se

*Amira Rajput*

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


EXHIBITS INLCUDED:
Plaintiff attaches supporting documentation referenced in this Complaint as exhibits, including the EEOC Notice of Right to Sue and other relevant correspondence.

Exhibit A – EEOC Notice of Right to Sue

Exhibit B – Demand Letter Sent to Defendant

Exhibit C - Documentation Showing Approved Disability Accommodations
And Communication Referencing Salary Reduction

**RE: Amira Rajput/Plaintiff vs One Medical/Amazon**

**Statement Regarding Submitted Supporting Documentation**

Plaintiff respectfully submits limited supporting documentation with this filing to provide context for the claims described in the Complaint. The submitted materials include documentation demonstrating that Plaintiff's employer approved certain disability accommodations. However, Plaintiff was informed that utilizing these approved accommodations would result in a reduction of Plaintiff's salary by approximately $15,000 per year.

Plaintiff contends that this condition effectively placed Plaintiff in the position of choosing between using medically necessary accommodations or accepting a substantial financial penalty which would cause loss of housing.

Plaintiff also includes examples of written communications in which Plaintiff attempted to address and resolve these concerns directly with the employer. These communications reflect multiple good-faith efforts by Plaintiff to seek clarification and resolution regarding the approved accommodations and the threatened salary reduction. Plaintiff attempted to engage in communication with several representatives within the organization over an extended period of time in order to resolve the issue internally and continue performing job duties without financial penalty.

Over the course of these efforts, Plaintiff was repeatedly redirected to contact additional personnel within the organization regarding the accommodation issue. Plaintiff was ultimately directed to communicate with approximately nine different individuals or representatives in an effort to obtain assistance and resolution. Despite these efforts, Plaintiff did not receive a substantive response addressing the approved accommodations or the threatened salary reduction. This process required Plaintiff to repeatedly explain the situation and provide documentation to numerous individuals, which created significant additional stress and administrative burden while Plaintiff was managing serious medical conditions, ongoing treatment, and completing essential job duties at the same time.

Plaintiff also sought assistance through administrative channels. Plaintiff previously contacted the Equal Employment Opportunity Commission seeking guidance and assistance regarding the disability accommodation issue. Plaintiff additionally requested an extension related to the 90-day deadline EEOC process due to ongoing medical conditions and the complexity of the situation. Plaintiff did not receive a response to this request and did not receive follow-up communication regarding the extension request.

Plaintiff further can provide documentation demonstrating that multiple (5) treating medical providers recommended disability accommodations since October 2025 and verified that these accommodations would not reduce Plaintiff's workload or essential job duties. Rather, the accommodations were intended to allow Plaintiff additional time to complete certain tasks due to medical limitations while still maintaining the same work hours and responsibilities. Upon request Plaintiff can include this medical documentation written in Plaintiff's current disability leave paperwork submitted to HR to demonstrate that qualified medical professionals confirmed that Plaintiff's accommodations would not result in a reduced workload and therefore should not have resulted in a reduction in compensation.

Plaintiff has demonstrated extensive efforts made to resolve the matter internally and through administrative channels before seeking relief from the Court. Despite Plaintiff's repeated good-faith attempts to seek clarification, follow internal procedures, and obtain guidance from appropriate agencies, the issue remained unresolved and Plaintiff did not receive meaningful assistance or clarification regarding the use of the approved accommodations.

**Pattern of Prior Conduct**

Plaintiff also references a prior $8,000 salary reduction one month after Plaintiff relocated. Plaintiff notified the employer of relocation, despite providing approximately four months' notice to Human Resources and despite no policy in the employee handbook indicating that such relocation would result in a reduction in pay. Plaintiff includes this information to demonstrate an ongoing pattern of employment actions affecting Plaintiff's compensation and working conditions. Plaintiff respectfully submits this information to provide context for the Court regarding the broader course of events leading to the current dispute involving disability accommodations and the threatened $15,000 salary reduction. Plaintiff believes these repeated compensation-related actions contributed to the financial hardship and instability experienced during the period described in the Complaint.

Case 2:26-cv-00430-JPS    Filed 03/17/26    Page 9 of 15    Document 1

## ▣ Outlook

---

**Amira Rajput, M.A.**

---

**From** Amira R. <amiracle.rajput7777@gmail.com>
**Date** Tue 3/10/2026 12:53 PM
**To** Hackney House <hackneyhouse@mandelgroup.com>

==Plaintiff's last communication to the team, without a reply back, before taking medically necessary two-month short-term disability beginning March 4, 2026.==

From: **Amira Rajput** <arajput@onemedical.com>
Date: Mon, Mar 2, 2026 at 4:04 PM *Never received a response back from anyone in this thread.*
Subject: Re: work accommodations
To: Gregory, Karen <gregkare@amazon.com>, Ashley Smith <ashsmith@onemedical.com>, Julie Sugarbaker <jsugarbaker@onemedical.com>, Kory Wilcox <kwilcox@onemedical.com>, Puno, Ken <kennpuno@amazon.com>

*EXHIBIT B:*

Hello Team,

I am writing to formally document ongoing concerns regarding my ADA-approved accommodation, the proposed reduction in my compensation, and the continued lack of written clarification despite repeated follow-up communications over the past five months.

My reasonable accommodation was approved on October 28, 2025. I was subsequently informed that my salary may be reduced by $15,000 based on an alleged "reduced workload." This mischaracterization by Meg Mohoric who is not an ADA specialist is inaccurate. I continue to work the same number of hours and perform the essential functions of my role. While certain tasks may take longer due to my disability, my workload and hours have and would not be reduced. My primary role remains providing professional and effective support to patient care, and I have consistently maintained positive performance and patient experiences throughout my tenure.

Due to the proposed salary reduction, I have been unable to implement or utilize the approved accommodation. A $15,000 decrease in compensation would create significant financial hardship and jeopardize my ability to maintain housing and meet basic living expenses. As a result, I have felt effectively prevented from accessing an accommodation that was formally approved.

It has now been approximately five months without substantive written clarification regarding whether my approved accommodation remains fully supported and whether my compensation will remain unchanged. A reduction in salary under these circumstances—where hours and essential job functions remain the same—raises serious concerns under the Americans with Disabilities Act (ADA), including potential failure to accommodate and unlawful retaliation.

I have received a Notice of Right to Sue from the EEOC and am mindful of the statutory deadlines associated with preserving my legal rights. My intention remains to resolve this matter internally and professionally. However, I must also ensure that my rights under federal law are protected.

I am requesting written confirmation within seven (7) business days that:

1. My ADA-approved accommodation remains in effect; and

2. My compensation will remain unchanged, as reducing my salary in connection with my disability or approved accommodation—absent any reduction in hours or essential duties— would be inconsistent with protections afforded under the ADA.

I continue to remain committed to my role, my colleagues, and the patients I serve. I am seeking clarity, compliance, and equitable treatment consistent with federal law.

I respectfully request a prompt written response so this matter can be resolved appropriately and timely.

Sincerely,
Amira Rajput, M.A.

EXHIBIT C:

Never heard back from Karen Gregory

On Tue, Feb 24, 2026 at 8:05 AM Amira Rajput <arajput@onemedical.com> wrote:
Hi Karen,

I'm following up on my disability work accommodations. My pay should not be reduced because I would not be working less hours; it takes me longer to complete tasks due to complex medical conditions; I'm currently seeing 4 different doctors and specialists. My clinical work with patients has not been impaired, which is the most important aspect of my role, but there should be no salary reduction because it does not fall under the category of 'reduced workload' which Meg initially reported. The EEOC (Equal Rights) has reached out to One Medical/Amazon on my behalf as well. I'm not working part-time, it's the same number of hours but it takes me longer. I CC my legal counsel (James End) on this matter as well. I love my job here, but I cannot have 9 patient slots on my calendar at this point in time. I'm requesting the work accommodation be effective immediately without a reduction in pay.

Ms. Rajput, M.A., CRNC, CHLC
Behavioral Health Care Manager

**Outlook**

Last print, thank you so much!

From Amira R. <amiracle.rajput7777@gmail.com>
Date Tue 3/10/2026 4:07 PM
To  Hackney House <hackneyhouse@mandelgroup.com>

ADDITIONAL OUTREACH FOR SUPPORT

Plaintiff has also made a report to the Civil Rights Division, DOJ, and still has not heard back from the governing body.

**From:** DOJ Civil Rights - Do Not Reply <civilrightsdonotreply@mail.civilrights.usdoj.gov>
**Date:** February 4, 2026 at 4:47:46 PM CST
**To:** amiracle.rajput7777@gmail.com
**Subject: Thank you for submitting a report to the Civil Rights Division**
**Reply-To:** civilrightsdonotreply@mail.civilrights.usdoj.gov



U.S. Department of Justice
**Civil Rights Division**

| civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: **716020-BKS**.

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect
—

### 1. We review your report

Our specialists in the Civil Rights Division carefully read every report to identify civil rights violations, spot trends, and determine if we have authority to help with your report.

### 2. Our specialists determine the next steps

We may decide to:

- Open an investigation or take some other action within the legal authority of the Justice Department.
- Collect more information before we can look into your report.
- Recommend another government agency that can properly look into your report. If so, we'll let you know.

In some cases, we may determine that we don't have legal authority to handle your report and will recommend that you seek


**Siri Found a Contact**
White, Matthew P - Dwd
matthewp.white@dwd.wisconsin.gov


Add   x


**White, Matthew P - DWD**
RE: LS202502156
**To:** Amira Rajput, M.A.

📁Inbox - a...77@gmail.com   February 5, 2026 at 9:24 AM

*Never heard back from Matthew White; no investigator has been assigned since I filed in NOV. 2025*

Hello Ms. Rajput,

Thank you for your email. We appreciate your patience while we work through the high case volume that we are experiencing. We assign cases in the order in which we received them, and your case will be assigned as soon as is practicable.

If you are concerned about the lapse of legal rights, you may want to consult a private attorney. Please note that your claims related to unpaid wages relate back to the date that you filed your complaint (11/19/25), so those claims will not expire while they are under investigation with the Division.

If you have any other questions, please feel free to contact us.

Sincerely,

*Plaintiff/I filed with the appropriate State of Wisconsin governing body with no support either.*

Matthew White (pronouns: he/his)
Deputy Administrator
Equal Rights Division
Department of Workforce Development
Phone: 608-405-4588
**STATE OF WISCONSIN**
**DWD**
Department of Workforce Development

**From:** Amira R. <amiracle.rajput7777@gmail.com>
**Sent:** Wednesday, February 4, 2026 11:09 AM
**To:** White, Matthew P - DWD <MatthewP.White@dwd.wisconsin.gov>
**Subject:** LS202502156

CAUTION: This email originated from outside the organization.
Do not click links or open attachments unless you recognize the sender and know the content is safe

LS202502156

Hello Matthew,
This is an urgent need, I must be assigned an investigator asap; I've been waiting 4 months which is unacceptable. There a legal deadlines I will miss if you don't assist in this very critical case. I could lose my job b/c of non-action taken by your department.

Respectfully,
Ms. Amira Rajput, M.A., CNRC, CHLC
424-425-5309

**ONE MEDICAL COMMUNICATIONS:**

From: Amira Rajput <arajput@onemedical.com>
Date: Tue, Feb 24, 2026 at 8:05 AM   *Again, never heard back from Karen Gregory*
Subject: Re: work accommodations
To: Gregory, Karen <gregkare@amazon.com>

Hi Karen,
I'm following up on my disability work accommodations. My pay should not be reduced because I would not be working less hours; it takes me longer to complete tasks due to complex medical conditions; I'm currently seeing 4 different doctors and specialists. My clinical work with patients has not been impaired, which is the most important aspect of my role, but there should be no salary reduction because it does not fall under the category of 'reduced

workload' which Meg initially reported. The EEOC (Equal Rights) has reached out to One Medical/Amazon on my behalf as well. I'm not working part-time, it's the same number of hours but it takes me longer. I CC my legal counsel (James End) on this matter as well.
I love my job here, but I cannot have 9 patient slots on my calendar at this point in time. I'm requesting the work accommodation be effective immediately without a reduction in pay.


Ms. Rajput, M.A., CRNC, CHLC
Behavioral Health Care Manager


---------- Forwarded message ---------
From: Amira Rajput <arajput@onemedical.com>
Date: Tue, Nov 4, 2025 at 4:56 PM
Subject: Re: work accommodations
To: Gregory, Karen <gregkare@amazon.com>, Silvia Pascarella <spascarella@onemedical.com>, Julie Sugarbaker <jsugarbaker@onemedical.com>

*Never got a response back again, from Karen Gregory* [handwritten]

Hi Karen,

I need to see only up to 6 patients per day moving forward from 11/5/25, for today 11/4/25 is almost over. I did get the approval for the disability work accommodations. I'm also requesting a change back to my original salary prior to moving, for there was no written or verbal advance notice there would be a change even though my notice was given in July 2025. My hope is HR abiding by CA and WI state and federal laws.

Thank you.

On Fri, Oct 31, 2025 at 2:26 PM Amira Rajput <arajput@onemedical.com> wrote:
thank you for the update. no work accommodations have been put in place yet, so please do not go into Workday and decrease my salary again. Both actions of reduction are not legal.


On Fri, Oct 31, 2025 at 12:12 PM Gregory, Karen <gregkare@amazon.com> wrote:
Hi Amira,
Thanks for reaching out. I am working with our employee relations team to investigate this further. I should hear back from them on Monday to determine next steps on the investigation. However, I wanted to confirm that I received your email. We will be in touch next week.
Karen Gregory (she/her)
Principal, HRBP | gregkare@amazon.com

**amazon** | health services

myHR Amazon A to Z | hrpartner@amazon.com

*Never heard Back from Karen Gregory* [handwritten]


From: Amira Rajput <arajput@onemedical.com>
Date: Thursday, October 30, 2025 at 1:50 PM
To: "Gregory, Karen" <gregkare@amazon.com>, Julie Sugarbaker <jsugarbaker@onemedical.com>
Subject: Re: work accommodations
Hi Karen,
nice to meet you, my name is Amira Rajput, a Behavioral Health Care Manager on the SF team. I am requesting a reinstatement of the $8,000 reduction in salary Meg Mohoric initiated. Reaching out to the CA & WI Labor Boards for clarity, I was emailed a statement from both Labor Boards informing me it was illegal to do such without my advance notice and agreement. I gave my lead notice of the relocation to WI back in July 2025; happy to provide the message I sent her if needed.
I would have never made this huge, costly relocation with that significant reduction. With any reduction, I would not have moved. According to ADA federal policy and state law, there should be no further, secondary reduction in salary for reasonable accommodations.
In working with my claims specialist from Matrix, she informed me only ADA certified HR employees can help regarding this. Are you able to assist with this matter?


Thank you kindly,
Amira Rajput

On Wed, Oct 29, 2025 at 1:40 PM Amira Rajput <arajput@onemedical.com> wrote:
Hi Meg,
I am requesting a transfer to a new HR person; I do not feel supported by you, not since day 1 when I filed an initial complaint about being bullied over the summer with a huge lack of understanding from your end. Putting me in a position to justify myself with 27 pages of evidence was wrong.
Regarding work accommodations, are you ADA certified? I've spoken with the CA and WI Labor Board, it is illegal to decrease my salary. Not just the $8,000 when I gave 2 months advance notice I was moving yet nothing was said, but also attempting to usurp disability laws put in place to protect those needing accommodations.
Respectfully, Amira Rajput
From: Amira Rajput <arajput@onemedical.com>

Date: Wed, Oct 29, 2025 at 10:44 AM
Subject: Fwd: work accommodations
To: Ashley Sutton <asutton@onemedical.com>

*Never heard back from Ashley Sutton who was Meg Mohoric's supervisor*

Hi Ashley,
I'm reaching out to discuss a few concerns about Meg Mohoric. She has made decisions about my pay reduction twice now, that have been illegal. I have consulted with the California Labor Board who emailed me stating it was illegal for her to reduce my pay by $8,000 after the fact, after 2 months of me relocating. I gave 2 months advance notice that I would be relocating to save money. Her reducing my pay that significantly without my knowledge has put me in a huge financial hole unable to pay rent which is more here in WI than in CA.
She also wrote me late last night that my work accommodations would result in another significant pay reduction going from $89,000 > $81,000 > $66, 825.00

According to the Labor Board, her decision to repeatedly reduce my salary is illegal.
Is there a good time we can discuss all this via a zoom call?

**APPROVAL OF ACCOMMODATIONS:**

On Tue, Oct 28, 2025 at 9:03 PM Meg Mohoric <mmohoric@onemedical.com> wrote:
Hi there Amira, thanks for reaching out. After connecting with Julie this morning, it seems the business can accommodate your request to see 6 patients a day, a reduction in clinical time, by way of a reduced work schedule. Seeing 6 patients a day will result in working 32.5 hours a week. 33 hours a week will bring your new compensation to $66, 825. If you'd like to proceed with this arrangement, let me know so I can make the necessary changes for you.

On Tue, Oct 28, 2025 at 9:37 AM Amira Rajput <arajput@onemedical.com> wrote:
Hello,

I spoke with my claims adjuster Bobbie Chapman yesterday. She informed me that there is available FMLA that is supposed to be used for doctor appts vs deferring time or taking PTO. She also mentioned that the ADA qualified HR employees here at One Medical (not sure who's ADA certified) can use the ADA certification form my PCP submitted last week to Matrix to adjust my schedule.
Just wanted to keep everyone in the loop. If you have any questions or need something else, feel free to reach back out.
Amira Rajput, M.A.